Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. On the date of plaintiffs injury, an employment relationship existed between plaintiff and defendant-employer.
3. The carrier on the risk for workers compensation purposes is Cigna Property Casualty.
4. Plaintiffs average weekly wage on the date of the injury was $689.20, which yields a compensation rate of $459.49.
5. Plaintiff sustained an injury while working for defendant-employer on or about 24 September 1997. Defendants deny that plaintiffs injury arose out of and in the course of his employment and deny the compensability of plaintiffs claim.
6. In addition to the deposition transcript and the exhibits attached thereto, the parties stipulated into evidence a packet of plaintiffs medical records. Plaintiffs Exhibits One and Two, a physical examination of plaintiff from 19 May 1995, and defendants answers to interrogatories, respectively, were also admitted into evidence. Defendants introduced and the Deputy Commissioner admitted into evidence the following exhibits: (1) plaintiffs Form 18; (2) plaintiffs notice of voluntary resignation; (3) plaintiffs employment application; (4) plaintiffs recorded statement; (5) plaintiffs certification of receipt of employee handbook; (6) plaintiffs employment discrimination complaint; and (7) Form 22 Wage Chart and payroll records.
7. The issues to be determined are whether plaintiff sustained a compensable injury by accident arising out of and in the course of his employment on 24 September 1997, and if so, to what benefits plaintiff is entitled.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was fifty-five years old. Plaintiff graduated from high school. Thereafter plaintiff took a course in welding for which he earned a certificate in 1962. Plaintiff has worked as a welder since 1962 with the exception of a two-year period in the early 1970s when he was shot in the back and suffered injuries to his lungs and liver as well as to his back. On the date of the hearing before the Deputy Commissioner, plaintiff was not employed in any capacity.
2. Plaintiff applied for a position with defendant-employer on 19 May 1995 and was hired as a second-shift welder on 24 May 1995. Plaintiff ultimately, however, began working the first shift. Plaintiff was then asked to work the third shift, 11:00 p.m. to 7:00 a.m., for two weeks. Plaintiff did not like working the third shift, in part because he was the only welder working in his area during the third shift. Because he did not want to work the third shift, on 19 September 1997 plaintiff submitted his resignation effective 26 September 1997.
3. On 24 September 1997 after 1:00 a.m. plaintiff was bending over while welding a nuclear valve when he felt a sharp pain in his chest and collapsed on the ground, unconscious. When he regained consciousness, plaintiffs torch was on the ground and was still burning. Plaintiff does not know how long he was unconscious, and there were no witnesses to this incident. Plaintiff got up and walked to the other side of the shop where two other welders were working. He told these men that he was having severe chest pains, and they suggested he call a doctor.
4. After the incident on 24 September 1997, plaintiff called the nurses line at Kaiser Permanente, his regular medical care provider, and reported chest pain below the left nipple. The nurse instructed plaintiff to report to the emergency room. Plaintiff called 911 and was transported by ambulance to Rex Hospitals emergency department where he reported intermittent sharp chest pains and difficulty with deep breathing and movement. He stayed the night at the hospital for tests and observation.
5. Plaintiff reported to the nurse at his regular medical care provider and to the emergency personnel who responded to his 911 call that he was suffering from chest pain. Plaintiff did not report back pain to the nurse or the emergency personnel, and he ambulated easily to the truck when emergency personnel arrived. Furthermore, the emergency department records do not reflect that plaintiff complained of back pain. It does not appear that x-rays were taken of plaintiffs back, although there was an x-ray taken of plaintiffs chest. No other tests or examinations were performed on plaintiffs back. Plaintiff was diagnosed with atypical, noncardiac chest pain, and no diagnosis was made with respect to his back.
6. Plaintiff next presented to his regular medical care provider on 6 October 1997, at which time he reported that he had been unable to work due to chest pain and anxiety. Plaintiff told the physician that he had experienced sudden and sharp chest pains while welding approximately ten days prior. There is no mention in this note of plaintiffs complaints of back pain.
7. On or about 2 December 1997, plaintiff filed with the Commission a Form 18 dated 25 November 1997. In this Form 18, plaintiff indicated that the nature and extent of his injury was "chest pain.
8. On 5 January 1998 plaintiff gave a recorded statement to the insurance adjuster for the workers compensation carrier in this matter. In the course of this recorded statement, plaintiff described the chest pain he felt on 24 September 1997. Plaintiffs recorded statement nowhere mentions that he suffered from back pain on the date of the incident, or that he was currently suffering from back pain.
9. The first medical record that reflects plaintiffs complaints of low back pain dates from 27 May 1998 when plaintiff reported to Johnston Memorial Hospital with low back pain of one to two days duration, as well as intermittent chest pain and left arm numbness. Plaintiff next began complaining of left side numbness and weakness, of unknown etiology, and increasing back pain.
10. On 15 September 1998 plaintiff reported to the University of North Carolina Hospital with complaints of low back pain that had been chronic since 1973. When he returned to UNC Hospital on 23 October 1998, plaintiff reported that his back pain, which radiated into his left leg, had been present for one year. An MRI was performed and revealed a herniated disc at L4-5 with compression of the spinal canal. Plaintiff was then referred to an orthopedic doctor who in turn referred plaintiff to a physical medicine physician. Plaintiff has not been considered a surgical candidate and has undergone conservative treatment, including medication and physical therapy.
11. It was when plaintiff began treating with the UNC physicians that the medical records first relate plaintiffs back problems to the welding incident of 24 September 1997. A note from 29 October 1998 indicates that the appointment was a follow-up of back pain from 24 September 1997. At an appointment on 19 November 1998 at the Family Practice Center at North Carolina Memorial Hospital, plaintiff gave a history of injuring his back at work in September of 1997; specifically, that after a fall while welding on 24 September 1997 he developed excruciating left-sided back pain that radiated around to the front of his body and into his left chest. Plaintiff gave a history that when he was taken to the hospital that night, "no attention was paid to [his] back.
12. Based upon the history and representations given by plaintiff, Dr. Strayhorn, plaintiffs treating physician, is of the opinion that the welding incident of 24 September 1997 is the cause of and therefore directly resulted in plaintiffs herniated disc and resulting back problems. However, it is significant that this opinion is based upon plaintiffs history as given to Dr. Strayhorn a year after the incident occurred.
13. The greater weight of the evidence does not support plaintiffs claim that the 24 September 1997 incident caused his herniated disc and back problems. None of the medical records mentions plaintiffs complaints of back pain until May 1998, a full eight months after the incident. Additionally, this May 1998 medical record noting plaintiffs complaints of back pain indicates that the duration of the pain was one to two days.
14. Further undermining plaintiffs credibility is the fact that neither his recorded statement nor his Form 18 reflects that plaintiff suffered from back pain after the 24 September 1997 incident. Instead, both indicate that plaintiffs complaints as a result of the 24 September 1997 incident were of chest pain. Furthermore, it was not until 19 November 1998 that the medical notes first reflect plaintiffs version that the pain that occurred on 24 September 1997 manifested itself in his low back and radiated around the front of his body into his left chest. These inconsistencies, along with the fact that plaintiff has had chronic back pain since 1973, led the Deputy Commissioner to find plaintiffs account of the cause of his back problems not credible. The Full Commission declines to reverse the Deputy Commissioners credibility determination.
15. Dr. Strayhorns opinion that plaintiffs herniated disc is directly related to the incident on 24 September 1997 is based upon representations made by plaintiff found to not be credible, and therefore undermine Dr. Srayhorns opinion and limit the weight accorded to it.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Based upon the greater weight of the evidence, plaintiffs claim that he injured his back while welding on 24 September 1997 is not viewed as credible. For that reason, plaintiff has not met his burden of proving that the welding incident was the proximate cause of his subsequently-diagnosed herniated disc and resulting back problems. Accordingly, plaintiff has not met his burden of proving by the greater weight of the evidence that he sustained a compensable injury by accident arising out of and in the course of his employment to his back on 24 September 1997. N.C. Gen. Stat. 97-2(6).
2. For the foregoing reasons, plaintiffs claim is not compensable under the provisions of the North Carolina Workers Compensation Act. N.C. Gen. Stat. 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiffs claim must be, and the same is HEREBY DENIED.
2. Each side shall bear its own costs of this proceeding.
This the ___ day of May 2001.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/mhb